**In re Mark WILLINGHAM and Deborah Willingham, Debtors.**

**Bankruptcy No. 90–33362.**

United States Bankruptcy Court,
N.D. Ohio, W.D.

Nov. 5, 1991.

Raymond L. Beebe, Toledo, Ohio, for debtors.

Louis J. Yoppolo, Toledo, Ohio, trustee.

John P. Gouttiere, Toledo, Ohio, for Miles Homes, Inc.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court after Hearing on Debtors' and Trustee's Objections to Relief from Stay and Abandonment by Miles Homes, Inc. At the Hearing, the parties were afforded the opportunity to present the evidence and arguments they wished the Court to consider in making its decision. The Court ordered the parties to file post-hearing memoranda on the issue of the validity of a mortgage on a land installment contract vendee's interest. The Court has reviewed the memoranda submitted, the evidence and arguments presented, and the relevant case law, as well as the entire record in this case. Based upon that review, and for the following reasons, the Court finds that Miles Homes, Inc. has a valid mortgage on the Debtors' real property.

## FACTS

On, or about, December 10, 1985, Mark J. Willingham and Deborah J. Willingham [hereinafter "Willinghams"], Debtors, contracted with Pathway Homes, a division of Miles Homes, Inc. [hereinafter "Miles"], movant herein, for the purchase of a Morgan-style home package. The Debtors then entered into a land installment contract with Max and Alice Rosonowski [hereinafter "Rosonowski"] for the purchase of a parcel of real property in Swanton, Lucas

County, Ohio, on April 24, 1986. This land installment contract was properly recorded.

About one month later, on May 30, 1986, the Debtors executed an open-end mortgage agreement and a promissory note in the amount of Thirty-eight Thousand Ninety-seven Dollars and Forty-seven Cents ($38,097.47), in favor of Miles, a division of Insilco Corporation. The mortgage was properly recorded. On, or about, December 3, 1990, Insilco Corporation assigned this mortgage to Miles. Under the terms of the agreement, the Debtors made additional purchases as permitted in the mortgage, charging these to the open ended mortgage agreement. The account balance on the date of filing was Sixty-seven Thousand Six Hundred Sixty-four Dollars and Forty-eight Cents ($67,664.48). The Debtors have not made a payment on this loan since March 15, 1990, thus they owe an additional Eight Hundred Fifty-three Dollars and Thirty Cents ($853.30) in arrearages.

On June 2, 1990, the Rosonowskis conveyed the property to the Debtors as evidenced by a general warranty deed. The Debtors alleged that Miles paid the outstanding balance due on the land installment contract. On October 1, 1990, the Debtors filed a petition for relief under Chapter 7 of the Bankruptcy Code.

Miles filed its Motion for Relief from Stay and Abandonment to which both the Debtors and the Trustee objected. Miles claimed it had a valid security interest in the Debtors' property by virtue of the open-end mortgage agreement and promissory note. Miles argued that the Debtors were in default, had no equity in the property, and could not afford to provide adequate protection. The Debtors argued that Miles did not have a valid security interest. The Trustee argued that Miles did not have a perfected security interest because the mortgage was filed prior to the Debtors obtaining legal title. The Trustee also questioned the amount due and owing as claimed by Miles.

The issue presented for decision at this stage is whether Miles has a valid security interest in the Debtors' land installment contract. The Court finds that it does have a valid security interest.

## LAW

■ A land installment contract is an executory contract because performance remains due on both sides. The vendee must tender the final payment at which time the vendor must deliver legal title to the property. *See* Ohio Rev.Code Ann. § 5313.01–.08. Until that time, the vendor retains legal title and the vendee has an equitable interest. A vendee can mortgage that equitable interest to the vendor to secure the purchase price. *Kelley v. Stanbery*, 13 Ohio Reports 408 (Licking Co. 1838). A vendee can assign that interest to a third party. Ohio Rev.Code Ann. § 5301.-331; *Churchill v. Little*, 23 Ohio St. 301 (1872). A vendee can also mortgage that equitable interest to a third party. *Philly v. Sanders*, 11 Ohio St. 490 (1860). *See also, Churchill v. Little* (a vendee under an executory land contract who assigns or mortgages the property creates a valid lien against the equitable interest of the vendee); *Alemania Loan & Building Co. No. 2 v. Frantzreb*, 56 Ohio St. 493, 499, 47 N.E. 497 (1897) ("Since the mortgagor has never held the legal title, the mortgages operated only to create a lien upon his equitable interest."); *Wood Sash, Door & Paint Co. v. Burrows*, 15 Ohio C.D. 781 (Cuyahoga 1903), *aff'd* 73 Ohio St. 372, 78 N.E. 1142 (1905) (a mortgage given by a vendee in possession before receiving a deed is not entitled to record. However, this case was decided prior to the enactment of O.R.C. § 5301.331 which permits the recording of such mortgages if couched in the form of an assignment.). In addition to the above analysis, the Court notes that the Ohio legislature has defined a land installment contract as an executory agreement which must conform to the formalities required by law for the execution of deeds and mortgages. Ohio Rev.Code Ann. § 5313.02. Accordingly, the Court finds that a vendee can mortgage his equitable interest in a land installment contract.

■ However, the vendee can only mortgage rights that the vendee may have or

may subsequently acquire. Prior to completion of the land installment contract, the vendee/mortgagor only has an equitable interest; and thus, a mortgagee only has an equitable mortgage which in effect becomes an assignment of the land installment contract. *Alemania Loan & Bldg Co. v. Frantzreb,* 56 Ohio St. 493, 47 N.E. 497; *Churchill v. Little; Wiggins v. Campbell,* 4 Ohio Dec. Reprint 410, 411 (1879) ("the execution of a mortgage by a [vendee] upon property held by him, by land contract operates as an assignment of the contract...."). Once the land installment contract is completed and the vendee obtains legal title, the mortgage attaches to the legal title. *Philly v. Sanders,* 11 Ohio St. 490 (1860).

The Court has reviewed the mortgage and has determined that it was an assignment of the Debtors' interest to Miles. The mortgage to Miles was recorded. Miles advanced funds to the Debtors on the basis of the mortgage. A review of the evidence submitted reflects that Max and Alice Rosonowski granted, by way of a general warranty deed, the real estate in question to the Debtors on June 2, 1990. The Debtors allege that Miles paid the outstanding balance to the Rosonowskis. The Court believes that it is not important who pays the balance due and owing on the land installment contract. The Court also believes that in the present case, it is irrelevant that the final payment on the contract was made post-petition. The equitable mortgage was recorded. The final payment was made on the land installment contract. A deed was executed conveying legal title to the Debtors. Consequently, the equitable mortgage attached to the Debtors' legal title at the time of conveyance. The Court finds that Miles has a valid security interest in the Debtors' property.

As Bankruptcy Courts are courts of equity, the Court also finds that the Debtors are estopped from denying the validity and enforceability of the land installment contract. The equitable estoppel doctrine means that one party will not be permitted to deny that which by words, acts, or silence, that party has induced a second party reasonably and in good faith to rely upon to the second party's prejudice or pecuniary disadvantage. Using equitable estoppel to remedy such situations, the Court must make a decision on a case by case basis. *First Federal Savings & Loan Association of Toledo v. Perry's Landing, Inc.,* 11 Ohio App.3d 135, 463 N.E.2d 636 (Wood Co. 1983). The Debtors executed the mortgage agreement. They made payments on the mortgage and made charges to the mortgage to their advantage. Should the Debtors now be permitted to deny the validity of the mortgage, Miles would suffer a pecuniary disadvantage as Miles would be unable to recover money or property for the default on what it believed was a valid mortgage agreement.

Under Section 362 of the Bankruptcy Code, a creditor may obtain relief from the automatic stay provisions if the creditor's interests would be harmed by the continuation of the stay. The Court lifts the automatic stay under two circumstances: (1) the debtor's inability to provide adequate protection; or (2) the debtor's lack of equity in the property and the property not being necessary for an effective reorganization. *See,* 11 U.S.C. § 362(d). If the creditor requests the relief, the creditor "has the burden of proof on the issue of the debtor's equity in the property." 11 U.S.C. § 362(g). This proceeding is one under Chapter 7, thus there will be no reorganization. Miles has provided the Court with a worksheet which the Court requires all creditors to complete when filing for Relief from Stay. Based upon that worksheet, the Court is unable to determine whether the Debtors' have any equity in the property. Therefore, an evidentiary hearing must be held on that issue.

In reaching these conclusions, the Court has considered all the evidence and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is

ORDERED that Miles Homes, Inc. has a valid mortgage on the Debtors' property.